UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| DESMOND HARRELL REDDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 21-1154 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION

Pending before the Court on Plaintiff Desmond Redden's Motion for Summary Judgment and Defendant Commissioner of Social Security's Motion for Summary Affirmance. For the reasons stated herein, Redden's Motion for Summary Judgment (ECF No. 11) is DENIED, and the Commissioner's Motion for Summary Affirmance (ECF No. 18) is GRANTED.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the claims asserted in the Complaint present a federal question under 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is a fifty-eight-year-old former prep cook who claims that knee and back pain interfere with his ability to sit, stand, kneel, and crouch to such an extent that he is unable to work. Redden filed a claim for disability insurance benefits and supplemental security income benefits on January 6, 20215, alleging disability since April 12, 2012. ECF No. 6-3 at 49. Plaintiff's date last insured was June 30, 2019, meaning that he must prove for the purposes of his disability insurance benefits that he was disabled on or before this date in order for the Social Security Administration to award those benefits.

The Administrative Law Judge ("ALJ") initially entered an unfavorable decision on August 15, 2017. ECF No. 6-3 at 46. Plaintiff appealed to the Appeals Council which granted review and remanded his claims for a new hearing on December 9, 2019. While his claims were pending, Plaintiff returned to work in 2016 and stopped working again in 2017.

On May 28, 2020, ALJ Shreese Wilson held a second hearing. On June 8, 2020, a little over a week after the hearing, Plaintiff's Counsel sent a letter explaining that he wished to rebut certain testimony and would follow-up with additional documents. ECF No. 6-7 at 75. ALJ Wilson entered an unfavorable opinion on June 11, 2020 without waiting for additional information from Plaintiff's counsel.

Plaintiff filed a request for review and the Appeals Council denied his request. Thus, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff has now filed an action in this Court appealing that final decision. His primary complaints are that he was denied the opportunity to rebut the vocational expert's testimony and that the ALJ did not credit his treating physician's determination of his limitations. The Court addresses each argument below.

## LEGAL STANDARD

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002)(internal quotation marks and citations omitted). The Court's function

is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of his or her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform his or her past relevant work; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer "leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir.

2001)(internal quotations and citations omitted). The plaintiff has the burdens of production and persuasion on steps one through four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Id.*

## DISCUSSION

The ALJ determined that Plaintiff appeared to meet steps one and two of the five step test, in that he did perform substantial gainful activity and suffered from an impairment. However, she found that his impairment did not meet the severity of the listed impairments under step three and that he is able to perform his past relevant work. Accordingly, she found that he was not disabled under the statute and not entitled to disability benefits.

Plaintiff's primary complaints are that he did not have the opportunity to rebut the Vocational Expert's opinion because the ALJ issued an opinion without waiting for Plaintiff to submit rebuttal information, and that the ALJ did not credit his treating physician's opinion on the physical limitations Plaintiff would experience at work. Plaintiff explains that Vocational Experts do not submit any prehearing reports and there was no way of knowing what she planned to say until she testified. Accordingly, he argues he was denied due process because Counsel sent a letter to the ALJ after the hearing stating that he intended to file rebuttal evidence, but the ALJ denied the claim without waiting for the rebuttal evidence. Redden also complains that the ALJ did not properly credit his treating physician's opinion that Redden had extreme physical limitations that would require him to lie down at least twice during an 8-hour work shift and that he could only walk or stand for a limited period of time.

Below, the Court summarizes the relevant record and explains how that record supports the ALJ conclusions. Accordingly, the Court is unable to agree with Plaintiff that the ALJ lacked substantial evidence for her opinion.

**A. Evidence from the Hearing**

Petitioner was born on July 23, 1964. ECF No. 6-2 at 42. He graduated high school and in the past fifteen years he has worked primarily as a prep cook. ECF No. 6-2 at 43–50. Redden alleges that he was unable to work due to issues from his bad back and bad knee that prevent him from doing the extensive standing, walking, or lifting, that his work as a prep cook requires.

At the hearing, Redden explained that he has looked for work as a line cook at certain times, but suspected he looked like a liability for a slip and fall because he was wearing knee braces. ECF No. 6-2 at 50–51. He testified that his most recent job was as a prep cook from 2015 to 2017 when he was fired after a disagreement with management. He also worked as a prep cook from 2007 to 2012 when he slipped and was injured at work and then was fired after a disagreement related to his injury. *Id*. at 42.

He also said that he would be unable to work at the time due to his back pain that renders him unable to stand for long periods of time. ECF No. 6-2 at 51. He said that physical therapy was not working despite going for approximately a year and a half. *Id.* at 51. He said that he does not lift anything heavier than a can of milk and that he cannot sit or stand for very long without experiencing intense back pain. ECF No. 6-2 at 54–55. He also testified that he uses braces on both of his knees, and he uses a cane whenever he leaves the house. ECF No. 6-2 at 62. He stated that he spends most of the day in bed and that he has fallen due to his knees buckling. *Id.* He also says that he has gout flare-ups approximately once a month and cannot get shoes on due to the pain in his toes.

He said the last time he cooked a full meal was at least a year ago—he can only prepare very simple food for himself and often has to sit down multiple times. ECF No. 6-2 at 59. He did say he is able to wash a dish and carry laundry to the machine and put it in but taking out the trash is too heavy. ECF No. 6-2 at 61. He also said that he experiences back pain that moves down his leg on a daily basis. ECF No. 6-2 at 52. He said that he takes more than one type of pain reliever. He claimed that the pain affected his ability to sit for periods of time and that he experiences intense pain after standing. *Id*. at 53. He also described his issue with his knees and his inability to lift more than 10 pounds or bend, stoop, crouch, crawl or kneel without aggravating his knees. *Id*. at 55.

### B. Redden's Medical Records

Redden provided lengthy medical records from several years, with physical therapy progress notes being the most extensive. In summary, his physical therapy treatment notes indicate that from 2017 to 2020 Redden was in and out of physical therapy treatment for back and knee pain. He would generally spend around 6-weeks in treatment and then would be discharged because his pain was significantly diminished or gone. The only exception being in early 2020, Redden did not appear to be significantly improving. However, the treatment notes stop before the May 2020 hearing.

Redden's treating physicians indicate that Redden reported falling multiple times over the years. They reflect that, at times, Redden reported severe back or knee pain. However, from 2017 until 2019, Redden was repeatedly successful in his physical therapy treatment. For example, in January of 2018, Redden reported no pain. ECF No. 8-1 at 42. In those notes, Redden also reported to his physicians that he was engaged in certain physical activities that sounded fairly strenuous. He reported that he had been manually transferring his disabled mother to and from her bed on

different occasions in 2019. ECF Nos. 8-6 at 56; 8-7 at 20. He also reported in May 2018 that he had been fishing and mowing which caused his whole body to hurt the next day. ECF No. 8-3. In October of 2018, he reported that he had been fishing and had caught and then cleaned 20 fish and that he was also been pushing his mom's wheelchair. ECF No. 8-4 at 38. He did also report numerous falls and various setbacks that increased his pain. ECF Nos. 8-1 at 30; 8-5 at 4; 8-7 at 62.

More recent physical therapy notes indicate that on August 6, 2019 his physician discharged him from his most recent physical therapy treatment largely because Redden reported he had none of the back pain that brought him to physical therapy. ECF No. 8-7 at 45. Redden returned to physical therapy in December 2019 reporting lower back and left leg pain. ECF No. 8-7 at 62. Redden consistently reported back pain in February and March of 2020 while in physical therapy. ECF No. 8-10. On April 22, 2020, Dr. Gregory David filled out a form regarding Redden's disability. He opined that at work, Redden would be off task 25 % or more of the day and would miss four or more days of work per month due to his physical limitations. He said Redden could sit for eight hours and stand or work for less than an hour and that he would need a sit-stand option. He also said that Redden would need to lie down once or twice a day for twenty minutes and that he would need a cane. Accordingly, Dr. David's description of Plaintiff's limitations was inconsistent with Plaintiff working full time.

C. **Vocational Expert Testimony**

At the hearing, the ALJ posited a number of hypothetical questions to the vocational expert about what sort of work a claimant with certain physical limitations and educational background could perform. The Vocational Expert explained that work as a prep cook is described as light work and semiskilled. ECF No. 6-2 at 64. The Vocational Expert stated that someone limited to

7

light work could perform the work of a prep cook. She also said there are other light work unskilled jobs in the national economy, including light housekeeping, light packing, and light inspection jobs. *Id*. at 65. She did state that a person who could walk or stand for no more than an hour during an eight-hour shift and needed a sit to stand option throughout the day would not be able to perform any of the light work jobs she had previously listed. She testified that most light work job require standing and that there are a few jobs that would allow for extended sitting, such as a house sitting, or school bus monitor. *Id*. at 67.

### D.  ALJ Wilson's Decision

ALJ Wilson ultimately found that Redden would be capable of performing work as a prep cook and thus, did not qualify for disability benefits. The ALJ observed that Redden completed a function report indicating that he was able to pay bills, handle a savings account and use a checkbook without reminders. ECF No. 6-2 at 18. Redden also reported being able to drive, walk, use public transportation, go out alone, attend church, go to his cousin's house, and fish. ECF No. 6-2 at 18. He also reported that he had no issues with concentrating and that he could finish what he started, follow instructions, and could pay attention for a long time. *Id*. The ALJ also observed that Redden reported no problems with personal care and said that he could cook. *Id*.

The ALJ walked through Redden's medical history to explain her reasons for her opinion. The ALJ explained that although Redden had medical impairments that could cause the alleged symptoms, she found that Redden's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records." ECF No. 6-2 at 20. She noted that his symptoms improved with physical therapy and medication and that the "longitudinal medical evidence is consistent with his ability to perform work within the above residual functional capacity." ECF No. 6-2 at 20.

8

She observed that in 2015, Redden complained of chronic knee pain, X-rays indicated ligament tears, and he needed assistance with rising from sitting to stand. *Id*. However, she observed that despite his complaints of pain, he was walking three to ten miles a day and riding his bike for three hours every other day. *Id*. After about a month in physical therapy, he had no complaints of pain and said he was able to squat better following leg exercises. *Id*. The ALJ outlined Redden's history of going to physical therapy for pain that improved in short order. She also noted that in 2015, a neurosurgeon noted his gout but Redden had not had any flare-ups. *Id*. Overall, the ALJ assessed that Redden's back and knee pain improved significantly with physical therapy, and he continued walking and riding his bike despite his complaints of pain and noted no limitations in activities of daily life. ECF No. 6-2 at 23.

Based in part on her review of Redden's medical records, the ALJ credited the opinion of Kathryne Endress, a Nurse Practitioner who had been treating Redden since December 2014 that he had no psychological limitations and would likely have to miss one day per month of work due to his symptoms. The ALJ declined to credit Dr. Gregory's April 2020 that Redden would need to lie down once or twice a day for twenty to thirty minutes and could stand or walk for less than an hour in an 8-hour period. ECF No. 6-2 at 24. Instead, the ALJ gave great weight to the opinion of the state agency medical consultant who opined in 2015 that claimant could perform light work and occasionally climb, kneel, stoop, crouch, or crawl. ECF No. 6-2 at 23. Despite the clinical information being dated, the ALJ found there was no reason to believe that Redden's condition had significantly deteriorated since that time. *Id*. She again noted that with physical therapy and medication Redden continued to improve his back and knee pain at different times.

As explained below, the Court finds that the ALJ's opinion was supported by substantial evidence and that there was no due process issue with her not considering Redden's rebuttal to the vocational expert.

E.  **Substantial Evidence Supports the ALJ's Findings**

Plaintiff complains that the record did not support the ALJ's findings that Plaintiff could stand and walk most of the day. ECF No. 12 at 9. In particular, Plaintiff complains that ALJ inappropriately did not credit Plaintiff's treating physician's functional assessment. *Id*. He argues that the ALJ's assessment is not supported by substantial evidence.

Generally, ALJs must credit a treating physician's opinion on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with other substantial evidence." *Burmester*, 920 F.3d 507, 512 (7th Cir. 2019); 20 C.F.R. § 416.927(c)(2)). When ALJs discount the treating physicians' opinion, they are required to provide "sound explanation for their decision to reject it." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017)

Despite rejecting the treating physician's opinion on Redden's physical limitations, the ALJ's decision is still supported by substantial evidence, and she adequately explains her reasons for rejecting the opinion. Here, ALJ reviewed the extensive medical records and chose to credit contrary medical opinions. She explained that there were contrary opinions that supported her finding that Redden could continue to perform his work as a prep cook. She also cited medical records indicated that Redden was repeatedly able to improve his back pain and knee issues. She explained that despite Dr. Gregory treating Redden extensively, his own treatment notes reflect that Redden improved with physical therapy and medication, undermining Dr. Gregory's opinion

that Redden had extreme limitation on his ability to work. *Id*. at 24. Accordingly, she concluded that Redden was exaggerating his symptoms and she also decided it was appropriate to discount his treating physician's testimony.

The ALJ gave great weight to the opinion of the State agency medical consultants who opined in 2015 that Redden could perform light work and could occasionally climb, kneel, stoop or crouch. ECF No. 6-2 at 23. She stated that although the opinions are dated, there was no new medical evidence that would indicate a worsening of Plaintiff's symptoms. *Id*. Instead, she observed that he continued to improve with physical therapy and medication. *Id*. Accordingly, she found these opinions to be consistent with objective medical evidence as well as the claimant's activities of daily living.

While the ALJ rejected the treating physician's opinion, she provided sound explanation for her decision to reject the opinion. She cited contrary medical records and explained why she chose to credit a different medical opinion over that of the treating physical. This Court agrees that there was substantial evidence to support the ALJ's decision and that she provided adequate reasons for deciding not to credit the treating physician's opinion.

### F. The ALJ's refusal to wait for Redden's rebuttal vocational expert was harmless error.

Plaintiff also argues that the ALJ's refusal to allow Plaintiff to submit a post-hearing memorandum to rebut the Vocational Expert testimony denied him his constitutional and statutory right to fully present his case. He argues that the ALJ relied on the testimony, meaning that the error was not harmless. At the hearing, the Vocational Expert responded to a number of hypothetical questions from the ALJ regarding what type of work would be available to individuals with certain physical limitations and a certain educational background. After the hearing, Plaintiff

11

sent a letter stating that he intended to submit rebuttal evidence regarding the Vocational Expert's opinion, but the ALJ entered an opinion without waiting for the rebuttal evidence.

Plaintiff states that he first indicated that he might want to submit additional rebuttal testimony on March 20, 2020, prior to the administrative hearing when he submitted a letter that, among other things, stated that he reserved the right to respond to any issue that arose during the hearing, particularly any vocational witness testimony. Specifically, he stated "[n]othing in this letter should be construed as waiving the claimant's right to submit written post-hearing objections and statements with respect to any issues that arise at the hearing, including vocational witness testimony." ECF No. 6-7 at 36. He repeated that statement in another update his representative sent the Court on May 17, 2020. ECF No. 12 at 3 (citing ECF No. 6-7 at 63). The ALJ gave Plaintiff's representative the opportunity to cross-examine the Vocational Expert and asked if he would like to make a closing argument, but Plaintiff's representative declined to give a closing arguement. ECF No. 18-1 at 4. The ALJ stated that "it looks like that your record's complete. I do have all records I need" and stated that she would be "getting a decision out as quickly as we can." *Id*. Counsel did not raise the issue despite the ALJ indicating that the record was complete, and a decision would be forthcoming as soon as possible. *Id*. Then, eleven days following the hearing, the Counsel sent a letter that the Vocational expert's testimony conflicts with reliable sources of job information, and that he needed two weeks from the date of the letter to submit rebuttal evidence. (ECF No. 6-7 at 75). The ALJ issued her decision on June 16, 2020 approximately twenty days after the hearing and a few days following the Counsel's letter. ECF No. 6-2 at 23.

Defendant argues that Plaintiff forfeited his right to submit additional briefing by not objecting to the Vocation Expert's testimony during the hearing. ECF No. 18-1 at 6. In the alternative, Defendant argues that any alleged error is harmless. Plaintiff argues that he has a

constitutional and statutory right to submit rebuttal information. ECF No. 12 at 4 –5. Plaintiff also asserts that the fact that the rebuttal evidence is not in the record, cannot be used against him. ECF No. 19 at 4. Accordingly, Plaintiff appears to suggest that the Court does not have enough information to determine whether the error was harmless or not.

Plaintiff has not explained what information he intended to submit to rebut the vocational expert's testimony but still complains that he was deprived the opportunity to submit the evidence. Defendant points out that Plaintiff's counsel stated that he intended to submit rebuttal evidence because there were "evidentiary conflicts with reliable sources of job information." ECF No. 6-7 at 75. However, the ALJ found Plaintiff was capable of his past relevant work as a prep cook, so any rebuttal evidence regarding the vocational expert's source of job information is likely not relevant because any testimony concerning other jobs (step five) is not at issue. The ALJ reasonably determined that Plaintiff could perform his past work at step four, and thus, any alleged error about the Vocational Expert's testimony or failure to allow rebuttal is harmless. *Gebauer v. Saul*, 801 F. App'x 404, 411 (7th Cir. 2020) (any error at step five was "not decisive" for the ALJ's ultimate decision because the ALJ found the claimant was not disabled at step four); *see also Kaquatosh v. Saul*, No. 19-CV-1204-SCD, 2020 WL 4260823, at *6 (E.D. Wis. July 23, 2020) (finding an ALJ's potential error at step five would not warrant remand because the ALJ's step four finding, that the claimant could return to his past relevant work, was not challenged).

Plaintiff has not persuaded the Court that the ALJ made an error by failing to hold her opinion until after Plaintiff submitted rebuttal evidence, and any alleged error is otherwise harmless. Accordingly, Plaintiff's motion fails on this point.

## CONCLUSION

Plaintiff bore the burden to prove that he was disabled before the ALJ. *See Karr v. Saul,* 989 F.3d 508, 513 (7th Cir. 2021). The ALJ correctly found that he did not meet that burden, supporting her opinion with substantial evidence and pointing to multiple pieces of evidence in the record to support her decision to afford Plaintiff's treating physician's opinion little weight. Defendant also presents a strong argument that Plaintiff waived his ability to challenge the vocational expert's testimony by not raising the issue during the hearing despite repeated opportunities to do so. In any event, the Court agrees that any error was harmless since the ALJ determined that Redden was able to perform his work as a prep cook.

Accordingly, Redden's Motion for Summary Judgment [11] is DENIED and Defendant's Motion for Summary Judgment [18] is GRANTED. The Clerk is DIRECTED to close this case.

ENTERED this 12th day of August, 2022.

                                                  /s/ Michael M. Mihm
                                                        Michael M. Mihm
                                               United States District Judge